SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANITA C. SIVICK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION H-06-3313 |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner, Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Plaintiff Anita C. Sivick filed this case under the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner denying her request for disability insurance benefits. The parties have filed motions for summary judgment (Dkts. 15, 16). Having considered the parties' submissions, the administrative record, and applicable law, the court recommends that Sivick's motion be denied and the Commissioner's motion be granted.

**I.   Background**

Sivick filed for disability benefits under Title XVI of the Social Security Act on February 12, 2004, and under Title II of the Act on February 23, 2004, alleging she was disabled and unable to work as of September 1, 2003 due to her heart condition and breathing problems. After her application and request for reconsideration were denied, an administrative law judge conducted a hearing on May 18, 2006. The ALJ held in a June 14, 2006 decision that Sivick was not disabled at any time from September 1, 2003 through the

date of the opinion. The Appeals Council denied Sivick's request for review, making the ALJ's determination the final decision of the Commissioner of Social Security. Sivick now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Analysis

### A. Standard of Review

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove she has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

### B. The Commissioner's Decision and the Evidence of Record

Sivick, 54 at the time of the hearing, has a 10th grade education and past relevant work as a food server/assembler, demonstrator, and machine operator/plastics. She has not worked since her alleged onset date of disability. The ALJ determined that Sivick has the following severe impairments, none of which meet or equal in severity a listed impairment:

3

diabetes mellitus, hypertension, ischemic heart disease with a history of myocardial infarction and double-bypass, carotid stenosis with a history of carotid endarterectomy, history of knee surgery, osteoarthritis, and hypothyroidism. The ALJ further found, based in part on Sivick's description of her activities of daily living, that Sivick had the residual functioning capacity to perform her past work and therefore was not disabled as defined by the Act.

Sivick argues that the ALJ erred in the following ways: (1) failing to consider anxiety and borderline intellectual functioning as medically determinable impairments, and failing to develop the record as to those impairments; (2) finding her to have the residual functional capacity to perform her past relevant work, and failing to call a medical expert before determining her RFC; (3) finding her testimony not credible, and yet relying on certian of her statements in support of his RFC determination; (4) failing to grant her a closed period of disability; and (5) failing to obtain an updated medical expert report as to medical equivalency.

### 1. Anxiety and Borderline Intellectual Functioning (BIF)

A medically determinable impairment is one which has lasted or can be expected to last for a continuous period of not less than 12 months, and prevents the claimant from engaging in gainful activity. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). "A medically determinable impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings," rather than on the plaintiff's statement of her symptoms alone. *See* 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.929(b).

The record does not contain evidence that Sivick suffered from anxiety lasting more than 12 months, or that her anxiety or BIF caused her any significant functional limitations.[1] *See Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984) (upholding denial of disability benefits where the claimant "failed to demonstrate that her impairments significantly limit her physical or mental abilities to do work.").

In this case, Sivick did not list anxiety or BIF as impairments in her applications for benefits. The only reference in the record to anxiety is a February 23, 2006 record indicating plaintiff reported trouble sleeping and had depression and anxiety,[2] and Sivick's testimony at the hearing that she had been taking anxiety medication for about 3 months.[3] Aside from isolated memory lapses when testifying, there is no evidence in the record regarding plaintiff's BIF. The absence of a record of treatment, diagnosis, or even inquiry into a mental impairment prior to applying for benefits weights against finding any impairment. *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005).

The ALJ has a duty to develop the record on mental impairments where there is evidence in the record sufficient to suggest that such an impairment exists, and "the claimant alleges . . . symptoms but the medical signs and laboratory findings do not substantiate any

---

[1] Sivick's contention that anxiety is a reasonable explanation for her chest pains is purely speculative and without any medical support in the record. Moreover, anxiety is a treatable condition and therefore not disabling. *See Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) ("A medical condition that can be reasonably remedied is not disabling.").

[2] R. 194.

[3] R. 257.

physical impairments capable of producing the pain or other symptoms." 20 C.F.R. § 404.1529(b). The ALJ's duty to investigate does not extend to possible impairments that are not alleged by the claimant or are not clearly indicated on the record. *See Leggett v. Charter*, 67 F.3d 558, 566 (5th Cir. 1995).

The ALJ did not err in failing to find, or further investigate, medically determinable impairments of anxiety and BIF.

### 2. Residual Functional Capacity

The ALJ found that Sivick had (1) the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) the ability to sit, stand, and/or walk for 6 hours in an 8 hour day; (3) a limited ability to climb stairs, ladders, ropes and could not run; (4) the ability to push/pull without limitation; (5) no problem with gross/fine dexterity; (6) the ability to get along with others; (7) the ability to understand detailed instructions, concentrate, and perform detailed tasks; and (8) the ability to respond and adapt to workplace changes and supervision.[4] The ALJ concluded, based on the testimony of a vocation expert, that Sivick's limitations did not preclude her from engaging in her past relevant work.[5]

Sivick argues that the ALJ erred in his assessment of her RFC by mischaracterizing her activities of daily living and by failing to get an updated medical assessment.

---

[4]    R. 15.

[5]    R. 16-17.

Specifically, Sivick takes issue with the ALJ's statement that Sivick "exchanges household duties and shopping for room and board."[6]

The ALJ's statement does not mischaracterize Sivick's testimony. Sivick testified that she does light housework, cooking, and goes shopping with her housemate, but does not vacuum or do laundry.[7] Her testimony is not inconsistent with the ALJ's finding that she exchanges household duties for room and board. The ALJ did not find that Sivick does all the household chores or even the bulk of them. In *Mims v. Califano*, 581 F.2d 1211, 1214 (5th Cir. 1978), relied upon by Sivick, the plaintiff was found disabled despite his ability to perform household tasks and mow his grass. *Mims* does not dictate that any plaintiff unable to perform comparable household tasks, such as vacuuming, must be disabled. In *Mims*, the disability determination was based not only on consideration of the plaintiff's activities of daily living, but also on medical reports, written statements by doctors, oral testimony of the plaintiff and his wife, and affidavits from five friends. *Id.* at 1213.

In this case, the ALJ based his RFC determination on Sivick's activities of daily living, medical records, and a Disability Determination Services Report dated August 26, 2004. Thus, the ALJ's characterization of Sivick's activities of daily living was only one factor in his overall determination of her RFC. The ALJ expressly considered numerous medical records, including: (1) the April 2004 medical source statement of Sivick's

---

[6] R. 16.

[7] R. 247.

cardiologist, Dr. Ahmad, which noted that Sivick's chest pains and symptoms related to an October 2003 carotid endarterectomy were resolved upon discharge; (2) the January 2004 medical evaluation by Dr. Sahi, which revealed that Sivick did not have a heart murmur and her heart appeared normal; (3) the May 2004, evaluation of Sivick's treating physician, Dr. Brodsky, which indicated that aside from her heart condition (which was followed by other physicians), "there were no abnormal physical findings that would limit her ability to perform work-related activities;" (4) October 2004 progress notes from People's Community Health Center, which indicated that Sivick reported "feeling better on average;" (5) June 2005 progress notes that indicated that after stopping smoking her shortness of breath had improved; and (6) March 2006 progress notes that indicated Sivick had not had chest pains for four months and could walk 30 minutes per day. The ALJ further noted that Sivick had never received treatment for any mental impairment and had only began taking anxiety medication three months prior.[8] The ALJ found additional support for his RFC determination in the August 26, 2004 DDS evaluation.

Because there is sufficient medical evidence from treating physicians in the record to support the ALJ's decision, he was not required to consult an additional medical expert. Sivick has not shown that had the ALJ developed the record further, the outcome of the case might have been different. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

The ALJ's RFC decision is supported by substantial evidence and is not error.

---

[8]     R.15-16.

### 3. Credibility Findings

"The ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Based on this, Sivick argues that it was error for the ALJ to find her testimony regarding her limitations not credible, yet to rely upon her description of symptoms to treating physicians.[9] Sivick's argument is without merit. The ALJ "may find all, only some, or none of an individual's allegations to be credible," or credible to a certain degree. SSR 96-7p, 1996 WL 374186 (July 2, 1996).

### 4. Closed Period of Disability

Sivick contends that because the ALJ found credible her 2006 statements that she had not had chest pains for four months, he should also have found credible her allegations of chest pains from September 2003 through December 2005 and granted her a closed period of disability. Again, Sivick's position is without merit. The ALJ did find that Sivick suffered from the severe impairment of ischemic heart disease.[10] But he did not find her to be disabled due to that impairment at any time from September 2003 through the date of his decision. Granting credibility to Sivick's claim of chest pains between September 2003 and December 2005, without credible medical evidence that her activities were limited, would

---

[9]  Plaintiff's motion, at 8.

[10] R. 14.

not change the outcome of the ALJ's disability finding. As noted above, the ALJ's findings regarding Sivick's functional limitations are supported by the record.

### 5. Expert on Medical Equivalency

Finally, Sivick argues that the ALJ erred because he made the finding that none of her impairments, either singly or in combination, met or equaled one of the Commissioner's listings without the assistance of an updated medical expert report. Sivick contends that the ALJ erred in relying on the August 26, 2004 DDS medical records review[11] because new records were submitted after that date. "It is clear that when additional medical evidence is received that in the opinion of the ALJ may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required." *Brister v. Apfel*, 993 F. Supp. 574, 578 n.2 (S.D. Tex. 1998) (citing SSR 96-6p, 1996 WL 374180, (July 2, 1996)). Sivick ignores the first part of this rule, *i.e.*, that an updated opinion is only necessary when "in the opinion of the ALJ" the new records would change the consultant's findings. Sivick does not explain what, if anything, in the records submitted after August 26, 2004 would have changed the result in this case.[12]

---

[11] R. 185-92.

[12] In making his determination that Sivick's ischemic heart disease did not meet or equal Listing 4.04, the ALJ considered an August 2004 x-ray showing a normal sized heart, and a March 2006 myocardial perfusion revealing "normal results, with no evidence of myocardial ischemia or scarring, normal left ventricular motion and normal ejection fraction." R. 15. This evidence would likely further support, not change, the DDS consultant's August 26, 2004 opinion.

**III.     Conclusion**

The court concludes that the ALJ's decision applied proper legal standards and is supported by substantial evidence.  Therefore, the court orders that the Commissioner's motion for summary judgment (Dkt. 16) is granted and Sivick's motion for summary judgment (Dkt. 15) is denied.

Signed at Houston, Texas, on August 15, 2007.

Stephen Wm Smith
United States Magistrate Judge